UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEAN O'CONNOR, ET AL. | * | CIVIL ACTION NO. 23-218 |
| | * | |
| | * | SECTION: "I"(1) |
| VERSUS | * | |
| | * | JUDGE LANCE M. AFRICK |
| | * | |
| ALLIED TRUST INSURANCE CO. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

In resolving plaintiffs' Motion to Compel on September 20, 2023, the Court ordered defendants to produce a supplemental privilege log. (Rec. Doc. 71). The Court has reviewed the privilege log and finds the majority of the documents have been properly withheld, that one category of documents must be produced, and that one category of documents must be produced in unredacted form for in camera review.

Background

This lawsuit concerns damage to property owned by plaintiffs Sean O'Connor and Allyson O'Connor in Vacherie, Louisiana as a result of Hurricane Ida on or around August 29, 2021. The property was insured by defendant Allied Trust Insurance Co. Plaintiffs filed suit in January 2023 alleging that Allied failed to timely and adequately compensate them for their substantial loss. Of relevance to the present dispute, Allied retained outside counsel in December 2022.

The issue presently before the Court concerns certain documents in Allied's claims file that were produced with redactions. Allied invokes the attorney client privilege, the work product doctrine, and the information's status as confidential and proprietary business information. Finding the privilege log initially produced by Allied was insufficient to assess the privilege asserted, the

1

Court ordered Allied reconsider its redactions and produce a supplemental privilege log. As noted above, Allied has produced the supplemental privilege log and the Court has reviewed it.

Law and Analysis

1. *Attorney Client Privilege and Work Product Doctrine: Insurer's Claims File*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original). Communications by the lawyer to the client are protected "if they would tend to disclose the client's confidential communications." Hodges, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." Id.

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. If the party resisting

2

discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and "it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. Proc. 26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted). Thus, even when a party shows it has substantial need for the materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B). Such materials are known as "opinion work product."

"In the realm of insurance claims and litigation, the analysis of whether documents were prepared in anticipation of litigation becomes more complicated. This is primarily because insurance companies are in the business of conducting, investigating and evaluating claims against its policies." Kansas City S. Ry. Co. v. Nichols Const. Co., No. CIV.A. 05-1182, 2007 WL 2127820, at *3 (E.D. La. July 25, 2007). Thus, courts generally maintain a "fact specific" inquiry into "whether a given item of discovery was produced in anticipation of litigation" Id. (quoting S.D. Warren Co. v. E. Elec. Corp., 201 F.R.D. 280, 283 (D. Me. 2001)). "In making this fact-specific inquiry, courts consider the primary motivating purpose behind the creation of the document, more so than the timing of production of that document." Houston Cas. Co. v. Supreme Towing Co., No. CV 10-3367, 2012 WL 13055045, at *3 (E.D. La. Sept. 17, 2012).

3

2. *Claims File at Issue*

The documents listed fall into six categories: (1) reserve information; (2) information improperly entered regarding an unrelated claim; (3) information described as "invoicing for desk adjusting"; (4) claim log notes regarding assignment to attorney; (5) claim log notes regarding inspection assignments; and (6) correspondence with counsel.

The Court finds that Category 6, the correspondence with outside counsel in December 2022, has been properly withheld as subject to the attorney client privilege.

The Court finds that Category 4, claim log notes regarding "Assignment to Attorney" and dated December 2022 are protected from disclosure by the work product doctrine because they were created in anticipation of litigation.

The Court finds that Category 2, labeled "System Generated Notes -- Notation improperly entered into claim file regarding unrelated claim" is irrelevant and has been properly withheld.

The Court finds that Category 3, "Claim Log Notes – Confidential Invoicing for Desk Adjusting," must be produced for in camera review. The nature of these documents and the reason why they should be shielded from discovery as "trade secret/proprietary/business practices" is unclear.

The Court finds that Category 5, "Claim Log Notes – System Generated Note Regarding Inspection Assignments," must be produced. Allied claims these are entitled to protection as "proprietary/business practices." They are dated August 2021 (two days after the hurricane) and were not created in anticipation of litigation. They appear to be relevant to the litigation. And Allied has failed to establish any legitimate proprietary business considerations that would justify protection from disclosure.

The Court finds that Category 1, "Claim Log Notes – Confidential Reserve Information," has been properly withheld. Reserve information is irrelevant here. As Magistrate Judge Wilkinson pointed out in Pain Clinic, Inc., v. Bankers Insurance Co., insurers are required by law to set loss reserves, and the purpose of this requirement is to assure the accuracy of their financial statements. Civ. A. No. 06-4572, 2007 WL 9780346, at *5 (Mar. 19, 2007). Requiring disclosure of this information undermines this purpose. Id. at *6. Moreover, the setting of a reserve amounts to an opinion and does not amount to an admission of liability. Id. at *6-7. Reserves reflect the cost of possible litigation in addition to the potential value of the claim itself. Id. at *7.

Plaintiffs here argue that the reserve information is relevant to their bad faith claims. The Court disagrees. Bad faith damages are warranted where the insurer did not conduct a reasonable investigation and/or where it acted arbitrarily and capriciously. Id. at *9-10. But as Judge Wilkinson found in Pain Clinic, "[t]he amount of reserves is too speculative and tenuously related to defendant's decisions concerning its investigation into coverage and payment to be relevant to defendant's possible liability for breach of the duty of good faith and fair dealing." Id. at *10. Moreover, and as Judge Wilkinson also observed, such information may very well be entitled to work product protection. Id. Once litigation is reasonably anticipated, reserve numbers will have been created in anticipation of litigation. And once outside counsel has been retained, the reserves may reflect counsel's mental impressions. See id. For all these reasons, the Court finds that privilege log entries labeled "Claim Log Notes – Confidential Reserve Information" are not discoverable.

## Conclusion

For the foregoing reasons, Allied has properly withheld correspondence with counsel, notes regarding assignment to counsel, information about unrelated claims, and confidential reserve

5

information. Allied must produce the documents labeled "Claim Log Notes – Confidential Invoicing for Desk Adjusting" for *in camera* review within seven days.[1] Allied must produce unredacted copies of the documents labeled "Claim Log Notes – System Generated Note Regarding Inspection Assignments" to the plaintiffs within seven days.

New Orleans, Louisiana, this 4th day of October, 2023.

Janis van Meerveld<br>
United States Magistrate Judge

---

[1] The documents can be provided to the Court via email to efile-vanmeerveld@laed.uscourts.gov or may be hand delivered.