UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEAN O'CONNOR AND ALLYSON O'CONNOR | * | CIVIL ACTION NO. 23-218 |
| | * | |
| | * | SECTION: "O"(1) |
| VERSUS | * | |
| | * | JUDGE BRANDON S. LONG |
| ALLIED TRUST INSURANCE COMPANY | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is defendant Allied Trust Insurance Company's Motion for Leave to File Counterclaim for Damages with Third Party Demand. (Rec. Doc. 168). For the following reasons, the Motion is GRANTED. Allied's Counterclaim for Damages and Third Party Demand shall be entered into the record.

Background

This is a Hurricane Ida property damage case concerning the home of plaintiffs Sean O'Connor and Allyson O'Connor. They claim that following Allied's adjustment of their claim and the parties' participation in the appraisal process, over $1,000,000 remains in dispute. They filed suit on January 17, 2023, seeking damages and statutory penalties for Allied's alleged bad faith.

The trial was originally scheduled to begin on November 6, 2023, but was continued due to a conflicting criminal trial on the Court's docket. At that time, the deadline to amend pleadings had already passed on May 26, 2023, and was never reset. The trial was reset to begin on February 26, 2024. Over the weekend before the Monday trial, plaintiffs disclosed additional relevant documents. The trial was continued again and discovery was reopened. Trial is presently scheduled to begin on September 16, 2024.

1

On July 22, 2024, Allied filed the present motion seeking leave to assert a Counterclaim for Damages against the plaintiffs and a Third Party Demand against Luke Irwin and Irwin and Associates, LLC (collectively "Irwin"). Allied alleges that at the time their home was damaged by Hurricane Ida, the plaintiffs' home had prior, unrepaired damage arising from a hurricane loss in 2012 and a lightning strike in 2016. It alleges that the plaintiffs claimed additional living expenses for the rental of an RV at $306 per day—resulting in payments of $147,000 by Allied—but that the company from which the RV was rented was owned by Sean O'Connor and was not in the business of owning or renting RVs. Allied alleges that Sean O'Connor testified that he and Allyson purchased the RV for approximately $38,000 and that they did not make any payments to Sean's company for the use of the RV. Allied alleges that as part of the repair process, the plaintiffs have expanded the living space of their home by adding a second floor to their single story house and that they have made betterments such as replacing their vinyl fence with a brick and iron fence, upgrading and installing additional cabinets throughout the home, upgrading countertops, upgrading shower tile, and upgrading flooring. They allege that the O'Connors included the expansion and upgrade expenses with their claimed repair costs.

Allied alleges that the plaintiffs retained Irwin as their appraiser and that Irwin provided an estimate for damages that included total damages of $1,994,576.53. It submits that this represents a 68% increase in alleged damages from the estimate by the public adjuster the plaintiffs had first retained. Allied's appraiser submitted an estimate of $756,646.68 in total damages. Irwin and the umpire (selected by the two appraisers) signed an appraisal award for a total of $1,285,958.42 in damages.

Allied alleges that Irwin's estimates were improperly inflated. They say that although the roof was replaced for $50,934.51 before the appraisals, Irwin included $93,448.49 in his estimate

2

for completed roof repairs, and Mauldin fixed the cost to replace the roof at over $94,000. Allied alleges that although it paid the remediation company approximately $167,000 and although the related invoice was included in Irwin's estimate, Irwin added overhead and profit and estimated the cost at approximately $217,000. Allied alleges similar anomalies for the insulation work, contents and cleaning of cloths, pack-out costs, cabinet replacement, and swing set replacement.

Allied alleges that Irwin originally sought to enter a Ranged Flat Fee Appraisal contract that would have made Irwin's fee contingent on the amount of damages included in Irwin's estimate. Instead, the plaintiffs agreed to pay Irwin a rate of $250 per hour, with a caveat that Irwin could waive any fees beyond 13% of the full value of the appraisable valuation. Allied alleges that the majority of the work on the appraisal was performed by James Rupert, who was paid approximately $15,000 his work. Yet, Irwin invoiced over $79,000 for his services, including a purported 147 hours of work at $250 per hour, imaging of the 3,000 square foot home for $22,074.06, and $12,500 for a building consultant. Allied alleges on information and belief that Irwin spent less than 4 hours working on the property. Allied alleges that Irwin manipulated the Xactimate estimate to increase the value of the estimate and influence the appraisal process. It alleges that Irwin's actions were intended to inflate the appraisal estimate and to justify the amounts Irwin charged for the appraisal.

Allied alleges that the O'Connors are liable for intentional concealment and misrepresentations concerning the extent of damage, the ownership of the RV, and the renovations and upgrades. Allied alleges that the O'Connors have breached the terms of the insurance contract and are not entitled to any benefits, including those paid to date. Allied alleges further that to the extent any of the material misrepresentations or concealments were committed by Irwin or aided by Irwin, Irwin is also responsible. Allied alleges further that Irwin purposefully inflated invoices

and estimates for the purpose of coercing Allied to pay insurance proceeds that were not incurred or owed. It alleges that Irwin's actions constitute negligence and a violation of La. Rev. Stat. 22:1924, which prohibits insurance fraud and imposes criminal penalties. It alleges further that Irwin and the plaintiffs engaged in a civil conspiracy to unlawfully obtain insurance proceeds from Allied.

Allied argues that justice requires that it be allowed to amend its pleadings to assert the counterclaim and third party demand. The plaintiffs oppose, arguing that Allied has unduly delayed the assertion of its claims.[1] They argue further that they would be prejudiced if the amended pleading were allowed because trial would be further delayed after it has already been delayed nearly a year. They also suggest that newly enrolled counsel for Allied has a history of filing frivolous claims.

In reply, Allied insists that its counterclaims are timely and that it has not engaged in undue delay. It argues the plaintiffs have continued to obstruct Allied's ability to discover the nature of its claims and that its delay has not been undue. Allied notes that it is not responsible for the previous trial delays—most recently it was the plaintiffs' improper withholding of documents that resulted in a continuance. It adds that the plaintiffs cannot be prejudiced by having to defend against proper counterclaims.

Law and Analysis

1. *Standard for Leave to Amend*

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties

---

[1] Irwin has also filed a memorandum in opposition, arguing primarily that the claim against him is futile. However, as Allied points out, Irwin is not yet a party to this case and does not have standing to oppose the pleading amendment. Irwin may assert its defenses to the Third Party Demand via an Answer or the appropriate motion.

or by leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 177 (5th Cir. 2016) (quoting Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003).

Where the court ordered deadline for amending pleadings has passed, that schedule "may be modified" to allow for additional amendments "only for good cause and with the judge's consent." Fed. R. Civ. Proc. 16(b)(4); see S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). When determining whether the movant has shown good cause, the Court considers "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.' " S&W Enterprises, 315 F.3d at 536 (quoting Reliance Ins. Co. v. Louisiana Land & Expl. Co., 110 F.3d 253, 257 (5th Cir. 1997)) (alterations in original).

*2. Analysis*

Although neither party explicitly addresses the Rule 16 standard, it is applicable here because the Scheduling Order deadline for amending pleadings has passed. Nonetheless, the Court finds that good cause has been established. Allied has explained extensively in its reply how it did not discover the full scope of the alleged misrepresentations and wrongdoing until recent months. For example, it points out that Sean O'Connor did not testify that he had never paid $306 per night for the RV until June 5, 2024. It points out that the plaintiffs withheld 166 pages of receipts, invoices, checks, and other evidence until February 23, 2024, including production of actual invoices for amounts paid for plumbing, HVAC, and electrical work at amounts lower than that quoted by Irwin. Much of the evidence of betterments and additions was not provided until afterward the February 2024 continuance. Allied also cites delays in receiving information from Irwin via subpoena—it was only in the last two months that it produced the ESX document that allows Allied to understand the steps Irwin took to increase the value of his estimate. It argues that possession of the appraisal quotes was insufficient to demonstrate the level of wrongdoing it now alleges.

Critically, the plaintiffs themselves failed to disclose much of the necessary information until well after the original pleading amendment deadline. Allied's explanation for its delay weighs in favor of finding good cause.

The Court also finds the proposed amendment important. Allied's counterclaim and its third party demand are best resolved in the context of the plaintiffs' lawsuit against Allied because the facts are intertwined. Moreover, the counterclaims may be compulsory under Rule 13 such that Allied is obligated to raise them in this proceeding. The importance factor weighs in favor of finding good cause.

As to prejudice, the Court finds that the plaintiffs would suffer some prejudice if the amendment is allowed now because it will not be possible to maintain the current trial date, which has already been continued before. But as Allied points out, the previous continuance was due to the plaintiffs' own failure to comply with their discovery obligations. And Allied's delay in raising the counterclaim is due in part to the plaintiffs' delay in producing information. Furthermore, the Court finds that Allied would be prejudiced if the amendment were not allowed because to the extent its counterclaims are compulsory, it could lose the ability to raise them. On balance, the Court finds that the prejudice to Allied weighs in favor of finding good cause.

Finally, the Court finds that the prejudice the plaintiffs and Irwin would suffer if they were forced to proceed to trial in less than two months on new claims can be remedied by a continuance. Accordingly, the Court finds good cause under Rule 16 to allow Allied's out of time amendment.

The Court next turns to the Rule 15 standard. The Court must possess a substantial reason to deny leave to amend. There is no such reason here. First, the Court finds that Allied's delay has not been undue. As discussed above, Allied was stymied in its discovery of the claims it now seeks to raise by the delayed production of evidence by the O'Connors and Irwin. A party cannot assert a claim of intentional misrepresentations based on conjecture alone—Allied will not be punished for investigating its claims before raising them. Critically, there is no evidence of bad faith or dilatory motive on Allied's part. Additionally, this is not an instance of repeated failures to cure deficiencies in the original pleading. And, as discussed above, the prejudice to be suffered by the plaintiffs is only the delay in resolution of their claim. But this prejudice is not undue—to some extent the delay is of their own making and, in any event, the prejudice to Allied of being precluded from pursuing its claims is more significant. Finally, the Court finds that, on their face, the claims are not futile. This stage of the pleadings is not a time to engage in a balancing of the evidence or

a determination of whether the alleged facts are sufficiently supported. Of course, the parties remain free to challenge Allied's claims in their Answers or via the appropriate Rule 12 motion. The Court finds the proposed amendment is proper under Rule 15.

Because both Rule 16 and Rule 15 have been satisfied, the Court finds that Allied must be allowed to file the proposed amended pleading.

## Conclusion

For the foregoing reasons, the Court finds good cause under Rule 16 for Allied's out of time amendment and the Court finds that it is in the interest of justice that the amended pleading be allowed under Rule 15. Accordingly, Allied's Motion for Leave (Rec. Doc. 168) is GRANTED; its Counterclaim for Damages and Third Party Demand shall be entered into the record.

New Orleans, Louisiana, this 30th day of July, 2024.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge