UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEAN O'CONNOR AND ALLYSON O'CONNOR | * | CIVIL ACTION NO. 2:23-cv-00218 |
| | * | |
| | * | |
| Plaintiffs | * | |
| | * | JUDGE BRANDON S. LONG |
| VERSUS | * | |
| | * | |
| ALLIED TRUST INSURANCE COMPANY | * | |
| | * | |
| | * | MAGISTRATE JANIS VAN MEERVELD |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### COUNTERCLAIM FOR DAMAGES
### WITH THIRD PARTY DEMAND

**NOW INTO COURT**, through undersigned counsel, comes Defendant and Third-Party Plaintiff, Allied Trust Insurance Company ("Allied Trust") pursuant to Rules 13 and 14 of the Federal Rules of Civil Procedure, who respectfully avers as follows:

### PARTIES AND JURISDICTION

1.

Counterclaim Plaintiff and Third-Party Plaintiff, Allied Trust, is a C corporation incorporated under the laws of the State of Texas and who is domiciled in, has its headquarters in, and has its principal place of business in Tampa, Florida. Allied Trust is authorized to do and is doing business in the State of Louisiana within the jurisdiction of this Honorable Court through the Department of Insurance of Louisiana. Under 28 U.S.C. § 1332 (C)(1), Allied Trust Insurance Company is considered a citizen of Texas due to its incorporation in same, and a citizen of Florida due to its principal place of business.

2.

Counterclaim Defendants, Sean O'Connor and Allyson O'Connor, are natural persons who are adult residents of the Parish of St. James, Louisiana.  Per their own allegations, Counterclaim Defendants are residents and citizens of the State of Louisiana.

3.

Third-Party Defendant, Luke Irwin, is a natural person and resident of St. Tammany Parish, Louisiana. Upon information and belief, Luke Irwin is a citizen of the State of Louisiana.

4.

Third-Party Defendant, Irwin and Associates, LLC, is a limited-liability corporation organized under the laws of the State of Louisiana. Upon information and belief, Irwin and Associates, LLC's headquarters and principal place of business are in Slidell, Louisiana.  Upon information and belief, Irwin and Associates, LLC's sole member is Luke Irwin, who is a citizen of Louisiana.  As a result, Irwin and Associates, LLC maintains solely a Louisiana Citizenship.

5.

Counterclaim Plaintiff and Third-Party Plaintiff, Allied Trust, is a citizen of Texas and Florida.  Upon information and belief, Counterclaim Defendants, Sean O'Connor and Allyson O'Connor, are citizens of Louisiana. Upon information and Belief, Third-Party Defendants, Luke Irwin and Irwin and Associates are citizens of Louisiana. As a result, there is total diversity for the purposes of 28 U.S.C. § 1332.

6.

As further outlined below, Counterclaim Plaintiff and Third-Party Plaintiff, Allied Trust, seeks reimbursement of all amounts paid and/or found to be owed as part of the underlying suit by Sean and Allyson O'Connor. Currently, Allied Trust has paid over Seven Hundred Thousand

Dollars in insurance benefits that could be recouped. Therefore, the amount in controversy under 28 U.S.C. § 1332 is satisfied.

7.

Per Federal Rules of Civil Procedure Rule 13, Allied Trust's claims against Sean O'Connor and Allyson O'Connor arise out of the same transaction or occurrence that is the subject matter of the Plaintiff's underlying claims.

8.

This Honorable Court has supplemental jurisdiction over Allied Trust's claims against Luke Irwin and Irwin and Associates, LLC pursuant to 28 U.S.C. § 1367, insofar as this Court has original jurisdiction over this matter and Allied Trust's third-party claims arise from the same transaction and occurrence as the claims asserted by Allied Trust against Sean O'Connor and Allyson O'Connor. Specifically, Allied Trust's claims against Luke Irwin and Irwin and Associates, LLC arise from their actions on the O'Connor's insurance claim and the resulting amounts that Allied Trust has paid, in part, due to the actions and representations of Mr. Irwin and Irwin and Associates, LLC.

**FACTUAL BACKGROUND**

**General History**

9.

On or about July 24, 2020, Sean O'Connor and Allyson O'Connor obtained a policy of insurance with Allied Trust ("Allied policy") for 21222 Highway 20, Vacherie, La 70090 ("the Property.")

- 3 -

10.

Upon information and belief, prior to placement of the Allied Policy, the Property suffered several loss incidents which caused relevant damage to the home.  This includes, but is not limited to a Hurricane loss in 2012 and a lightning strike in 2016. Upon information and belief, Sean and Allyson O'Connor had not completed all repairs due to these prior losses before Hurricane Ida.

11.

On or about August 29, 2021, the Property was struck by Hurricane Ida.  This loss event was reported to Allied Trust, who adjusted the claim timely and in good faith.

**<u>Additional Living Expenses</u>**

12.

On or about October 19, 2021, Sean and Allyson O'Connor submitted a quote for an RV rental from Perspective Solutions in the amount of $306.00 per day. Over the course of this claim, Allied Trust paid $147,000.00 for this alleged RV rental.

13.

Upon information and belief, Perspective Solutions is an Information Technology company owned by Sean O'Connor and the company is not in the business of owning or renting RVs. Upon information and belief, Perspective Solutions did not own the RV used by Sean O'Connor and Allyson O'Connor.

14.

Per the testimony of Sean O'Connor, the RV was owned by Sean O'Connor and Allyson O'Connor and was purchased for approximately $38,000.00. Further, Sean O'Connor, testified under oath that neither he nor Allyson O'Connor made any payments to Perspective Solutions

for the use of this RV. Upon information and belief, Perspective Solutions ceased operations and was dissolved on December 20, 2021.

15.

Despite the above, Sean and Allyson O'Connor submitted seven or more "invoices" claiming that Perspective Solutions was billing the O'Connors approximately $9,486 per month for this RV rental.  Sean O'Connor and Allyson O'Connor submitted invoices from Perspective Solutions through 2022.

**Repairs and Upgrades to the Home**

16.

On or about February 15, 2022, Sean O'Connor and Allyson O'Connor paid Bryan Galley Builders $50,934.52 for a roof replacement to the Property. This replacement was completed prior to May 2022.

17.

Cornerstone provided both water and mold mitigation services to the O'Connors for a total of $167,434.46. These amounts were paid directly to Cornerstone.

18.

Upon information and belief, Sean O'Connor and Allyson O'Connor have expanded living space and made betterments as part of the repair and renovation process. This includes, but is not limited to:

- Adding a second floor to their single story house;
- Replacing a vinyl fence with a brick and iron fence;
- Upgrading and adding additional cabinets throughout the home;
- Upgrading countertops in the main kitchen, back kitchen, powder room, master bathroom, utility room, laundry room, guest bathroom, and sunroom bathroom.
- Upgrading shower tile; and,
- Upgrading the flooring in the home.

This expanded living space and the additional cost for betterments are not damages from the storm that are payable under the Allied Trust Policy.

19.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted various estimates to Allied Trust and the O'Connors' own appraiser/representative, Luke Irwin and Irwin and Associates, LLC, that included these betterments and expanded living space. Upon information and belief, these estimates were provided without disclosure or explanation regarding the nature of the upgrades. Without limitation, Allied Trust provides the following examples in support of its claims.

20.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a countertop quote from Michael Paul's Nature Stone. This quote was for a better grade and material for the countertops and further included additional countertops for the newly built second floor without disclosing this information to Allied Trust. This quote was submitted to Allied Trust for payment as part of this claim and to Luke Irwin and Irwin and Associates, LLC, for inclusion in the appraisal process.

21.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a quote from Ferguson Bath Kitchen and Lighting Gallery for sinks, tubs, and other fixtures. Upon information and belief, this quote includes fixtures for the proposed second story bathroom. This quote was submitted to Allied Trust for payment as part of this claim and to Luke Irwin and Irwin and Associates, LLC, for inclusion in the appraisal process.

22.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a quote from Baton Rouge Custom Cabinets, LLC for cabinets throughout the property. Upon information and belief, this quote includes the purchase of new cabinets that were not in existence prior to Hurricane Ida. This quote was submitted to Allied Trust for payment as part of this claim and to Luke Irwin and Irwin and Associates, LLC, for inclusion in the appraisal process.

23.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a quote from Wilserv Insulation for insulation throughout the property. Upon information and belief, this quote includes additions to the newly built second floor that is not related to the damage to the property. This quote was submitted to Allied Trust for payment as part of this claim and to Luke Irwin and Irwin and Associates, LLC,  for inclusion in the appraisal process.

24.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a quote from WorkBox, LLC for an alleged storage container for contents. Upon information and belief, this storage unit was actually used as an office or workspace for Allyson O'Connor rather than a storage unit. An office or workspace would be considered Additional Living Expenses and subject to the policy limits that had already been exhausted.

25.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted various quotes for electrical and plumbing repairs to the property. In addition to alleged damages from Hurricane Ida, these quotes included electrical and plumbing work to be performed on the

expanded living space. These quotes were submitted to Allied Trust for payment as part of this claim and to Luke Irwin and Irwin and Associates, LLC, for inclusion in the appraisal process.

## Appraisal and Estimates

### 26.

Sean O'Connor and Allyson O'Connor retained a public adjuster named Mark Vinson. Mark Vinson prepared an estimate for the damages to the Property that totaled $836,533.80 for Coverage A damages.  Upon information and belief, the Louisiana Secretary of State website does not show Mark Vinson as a licensed public adjuster in Louisiana.

### 27.

Allied Trust invoked the Policy's appraisal clause for the Hurricane Ida claim and named Mark Harter as its appraiser.  Sean O'Connor and Allyson O'Connor named Luke Irwin of Irwin and Associates, LLC, as their appraiser.  The appraisers named Scott Mauldin as their umpire.

### 28.

Luke Irwin of Irwin and Associates, LLC, eventually presented an estimate for damages to The Property that asserted $1,407,055.77 under Coverage A and $1,994,576.53 in total damages.  This represents a 68% increase in alleged damages from the public adjuster's estimate.

### 29.

Allied Trust's appraiser, Mark Harter, submitted an estimate of $532,931.38 for Coverage A and $756,646.68 total. Mark Harter's total award included the full $147,000.00 for ALE based on the Perspective Solution invoices.

30.

Luke Irwin of Irwin and Associates, LLC and Umpire Scott Mauldin signed the appraisal award for damages of $775,470.28 under Coverage A and $1,285,948.42 in total damage to the property.  Mark Harter refused to sign the award given objections to the accuracy of same.

31.

As discussed below, Luke Irwin of Irwin and Associates, LLC's estimate and the appraisal award signed by Scott Mauldin failed to properly consider, assess, challenge, or investigate previous invoices and quotes submitted to the appraisal panel by the O'Connors. Likewise, the estimate submitted by Luke Irwin and the award signed by Scott Mauldin were inflated and set forth an excessive scope of work for this Hurricane Ida repair. Without limitation, Allied Trust provides the following examples in support of its claims.

32.

Sean O'Connor and Allyson O'Connor's roof was replaced for $50,934.52 by Bryan Galley Builders prior to appraisal being invoked. The invoice for this work was provided to Luke Irwin of Irwin and Associates, LLC and to Scott Mauldin. Further, this incurred cost was specifically noted in Mark Harter's appraisal position. Regardless, Irwin included $93,448.49 in his estimate for completed roof repairs. Mauldin agreed and fixed the cost to replace the already replaced roof at $94,216.48. On October 19, 2022, Sean O'Connor emailed Irwin about what he perceived was improper stating "(o)n page 11 it has the totals for the roof. My roof is done and paid for and the cost of the roof came in around 52k." According to Mr. O'Connor's testimony, Mr. Irwin never provided an explanation in writing. Ultimately this $43,000.00 windfall was included in Irwin and Mauldin's appraisal award.

33.

Sean O'Connor and Allyson O'Connor hired Cornerstone to remediate their Hurricane Ida damage at a cost of $167,434.46. Allied Trust paid this amount directly to Cornerstone. The invoice for this work was provided to Luke Irwin of Irwin and Associates, LLC and to the umpire, Scott Mauldin. Unlike the roofing estimate, Mr. Irwin actually included this invoice in his estimate. However, he improperly added overhead and profit inflating the already incurred and paid amount to $217,664.80. This again was brought to Mr. Irwin's attention by Mr. O'Connor on October 19, 2022. Despite this notice, it remained in Mr. Irwin's estimate and ultimately was included in the umpire's position for $200,921.36 or a windfall of $33,486.90.

34.

Sean O'Connor and Allyson O'Connor received a bid for insulation work for the property from Wilserv Corp in the amount of $23,531.00.  Luke Irwin of Irwin and Associates, LLC and Scott Mauldin received this bid item. Irwin included this bid item in his estimate but inflated it to $31,599.10. Further, Mr. Irwin still included additional insulation line items throughout his estimate adding almost an additional $20,000.00. Stated differently, Irwin's estimate turned a $23,531.00 bid into a $51,599.10 expense and windfall. This again was brought to Mr. Irwin's attention by Mr. O'Connor on October 19, 2022. Once again, Irwin knowingly ignored the facts and embraced the fiction.

35.

Sean O'Connor and Allyson O'Connor provided Irwin a quote for cleaning of cloths and a contents list. According to a November 7, 2022 email from Sean O'Connor, the requested contents and cleaning costs totaled $59,000.00. Irwin's estimate included $79,721.51 for

replacement of contents and $23,343.02 for cleaning of contents, nearly doubling the total to $103,064.53.

36.

Sean O'Connor and Allyson O'Connor submitted quotes for pack-out and pack-in of contents from Cornerstone to Irwin as part of the appraisal process. At the time of appraisal, pack out had already been completed. Those quotes totaled $56,150.52. Luke Irwin included these quotes in his estimate but increased their value to $78,517.62 by adding overhead and profit to them including for the completed work.

37.

Sean O'Connor and Allyson O'Connor submitted a quote for cabinet replacement from Baton Rouge Custom Cabinets to Luke Irwin as part of the appraisal process. This quote totaled $102,467.19. Luke Irwin included this quote in his estimate but raised the amount of same to $146,128.20. In addition, Mr. Irwin included an additional $80,503.39 in cabinets for a total of $226,611.59.

38.

Upon information and belief, Sean O'Connor and Allyson O'Connor submitted a photo of a simple swing set that was damaged by Hurricane Ida. Despite the clear photo evidence demonstrating the type of swing set and the relatively low value of same, Luke Irwin estimated the set at $11,391.70.

**Luke Irwin and Irwin and Associates, LLC**

39.

Luke Irwin of Irwin and Associates was named as the insured's appraiser in this matter.

40.

Irwin and Associates submitted a bill for these services in the amount of $79,925.92. The invoice asserts Irwin and Associates did 147 hours of work at $250.00 an hour, for a total of $36,750.00.  This invoice includes a $22,074.06 charge for Matterport imaging for a 3000 Sq foot home that was completely gutted, a $3,875.00 charge for moisture mapping to a gutted property, and a $12,500.00 charge for a building consultant.

41.

During his deposition, Mr. Irwin admitted he retained a building consultant named James Rupert to assist in this case. Upon information and belief, Mr. Rupert inspected the property, created the underlying appraisal estimate in Xactimate, and completed the vast majority of work on the appraisal. Upon information and belief, Irwin spent less than four hours working on this appraisal estimate himself.  Upon information and belief, Mr. Rupert was paid $15,860.18 for his services on this claim despite doing the majority of the work.

42.

At the outset of Mr. Irwin and Irwin and Associates, LLC's involvement, Irwin and Associates attempted to have the O'Connors execute a "Ranged Flat Fee Appraisal Contract." This contract would have made the amount that Irwin and Associates received in payment directly contingent upon the amount of damages that Luke Irwin included in his estimate.  Allied Trust asserts that such a contract is improper for an appraiser and disqualifies them from service as an appraiser in a case by giving them a financial interest in the matter in violation of the terms and conditions of the Allied Trust Policy and La. R.S. 22:1892(G), which require an appraisal to be "impartial."

43.

Although Irwin of Irwin and Associates, LLC tried to reach a ranged fee agreement at first, Irwin and Associates, LLC changed course and the O'Connors agreed to an "hourly appraisal contract" which ponders in relevant part:

> Appraiser shall provide professional services in accordance with the agreed upon Scope of Work of working in the duties of an INSURANCE APPRAISER. These services are provided at a rate of $250 per hour, plus any necessary reimbursable expenses*. In an effort to safeguard and protect the policyholder in a good faith effort from any possibility of extensive hours or unreasonable fees, IRWIN & Associates retains the right to rebate and waive any billable hours fees beyond thirteen percent (13%) of the full value of the appraisable valuation.

The O'Connors agreed to this contract. This contract maintains a contingency fee basis in violation of La. R.S. 22:1892(G) and of the terms and conditions of the Allied Trust Policy, which require an appraisal to be "impartial." Allied Trust again maintains this contract gives Irwin and Associates, LLC an illegal financial interest in the outcome of the matter and incentivized excessive billing and estimates.

44.

Upon information and belief, Mr. Irwin did not work 147 hours on this claim. In fact, Mr. Irwin admitted that such number included intake staff and other administrative roles that would not qualify for the $250 an hour rate per the terms of the Irwin Contract. To date, Mr. Irwin has not provided any timesheet or justification to demonstrate the absurd amount of hours billed.

45.

Upon information and belief, Luke Irwin and Irwin and Associates manipulated their Xactimate estimate to increase the value of the Xactimate estimate and influence the claim and appraisal process in order to justify charging greater amounts of the insured.

46.

Upon information and belief, the actions taken by Luke Irwin and Irwin and Associates in this matter were for the specific and intentional purpose of inflating the appraisal estimate and award to justify the amounts charged by Irwin and Associates and Luke Irwin.

## COUNTERCLAIM FOR DAMAGES

47.

The above paragraphs 1-46 are hereby reiterated and pled by reference as if set forth again in their entirety.

48.

Sean O'Connor and Allyson O'Connor's intentional concealment and misrepresentations of facts regarding the extent of damage from prior claims during Allied Trust's adjustment and investigation of the subject claim, as further described in paragraph 10, were material to and have prejudiced Allied Trust's adjustment and investigation of this loss. Further, such concealments and material misrepresentations were solely for the purpose of obtaining benefits not owed by attempting to classify unrelated or pre-existing damages as if they had been caused by Hurricane Ida.

49.

Sean O'Connor and Allyson O'Connor's intentional concealment and misrepresentations of facts regarding the ownership of the RV and the Additional Living Expenses during Allied Trust's adjustment and investigation of the subject claim, as further described in paragraphs 12-15, were material to and have prejudiced Allied Trust's adjustment and investigation of this loss. Further, such concealments and material misrepresentations were solely for the purpose of

obtaining benefits not owed by attempting to inflate the amount of additional living expenses incurred and to hide the true nature of such expenses.

50.

Sean O'Connor and Allyson O'Connor's intentional concealment and misrepresentations of facts regarding the renovations and upgrades to the Property during Allied Trust's adjustment and investigation of the subject claim, as further described in paragraphs 16-23, were material to and have prejudiced Allied Trust's adjustment and investigation of this loss. Further, such concealments and material misrepresentations were solely for the purpose of obtaining benefits not owed by attempting to classify unrelated improvements or additions to the Property as if they had been damage caused by Hurricane Ida.

51.

The Policy does not provide coverage for any loss made subject of this litigation based on the insureds' false statements, intentional concealment, or misrepresentations of material facts and circumstances, both before and after the loss, pursuant to the following Policy provisions:

**SECTION I – CONDITIONS**

**R.      CONCEALMENT OR FRAUD**

With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

**a**.      Intentionally concealed or misrepresented
             any material fact or circumstance;
**b.**      Engaged in fraudulent conduct; or
**c.**      Made false statements;
relating to this insurance.

*Allied HO 00 03 05 11 as amended by ALLIED HO3 SP LA 19.09*

52.

Sean and Allyson O'Connor's intentional failure to provide information available to them and their intentional concealment and misrepresentation of facts and circumstances, as further described above, were material to and have prejudiced Allied Trust's adjustment and investigation of this loss.

53.

Because the Policy does not provide coverage for the subject loss for the reasons expressed above, and/or those which may be pled in the future, Allied Trust did not and does not owe Sean O'Connor and Allyson O'Connor any payment under the Policy or any other juridical act or law, much less any further payment.

54.

As such, Allied Trust's payments of $836,574.92 unjustly enriched Sean and Allyson O'Connor, who, pursuant to Louisiana law, are obligated to Allied Trust in the amount of $836,574.92. Further, Sean and Allyson O'Connor's intentional and material concealment and misrepresentations have harmed Allied Trust in terms of unnecessary costs and fees. Allied Trust seeks reimbursement of same.

55.

Allied Trust asserts that Sean O'Connor and Allyson O'Connor have breached the terms and conditions of the Allied Trust Policy contract and are thereby not entitled to any of the benefits paid to date. Allied Trust reserves the right to assert additional grounds for the denial of the subject claim and in support of the instant cause of action as further information is learned through discovery, including but not limited to, any Policy exclusions or other provisions.

## THIRD PARTY DEMAND

### 56.

The above paragraphs 1-54 are hereby reiterated and pled by reference as if set forth again in their entirety.

### 57.

To the extent any of these material misrepresentations or concealments alleged and outlined above were committed by Luke Irwin or Irwin Associates, LLC on the behalf of Sean O'Connor and Allyson O'Connor, Luke Irwin and Irwin and Associates are likewise personally liable for the harm caused by same and for their breach of the contract.

### 58.

To the extent any of these material misrepresentations or concealments alleged and outlined above were aided by Luke Irwin or Irwin Associates, LLC on the behalf of Sean and Allyson O'Connor, Luke Irwin and Irwin and Associates are likewise personally liable for the harm caused by same.

### 59.

In addition, Luke Irwin and Irwin and Associates have taken affirmative steps to misrepresent the value of the O'Connor's claims.  As further described in paragraphs 24-36, Luke Irwin and Irwin and Associates, LLC purposefully and improperly inflated invoices and estimates for the sole purpose of enlarging the appraisal position. This intentional misrepresentation of the damage sustained was aimed at coercing Allied Trust to pay insurance proceeds that were not incurred and were not owed.

60.

The actions laid out above, in addition to those to be demonstrated further during litigation, constitute negligence pursuant to LA-C.C. art. 2315 et seq. and further violate widely accepted business standards.

61.

The actions laid out above, in addition to those to be demonstrated further during litigation, further violate La. R.S. 22:1924. Specifically, Luke Irwin and Irwin and Associates presented written documents in support of an insurance claim knowing that it contained false, incomplete, and/or fraudulent information concerning material facts and things to this claim and Allied Trust's Policy No. 845450.

**DEMAND AGAINST O'CONNORS, LUKE IRWIN, AND IRWIN AND ASSOCIATES**

62.

The above paragraphs 1-61 are hereby reiterated and pled by reference as if set forth again in their entirety.

63.

Allied Trust further alleges the O'connors, Luke Irwin, and Irwin and Associates, LLC engaged in a civil conspiracy pursuant to LSA-C.C. art. 2324 in order to unlawfully obtain insurance proceeds from Allied Trust.  These intentional acts were performed to cause damage to Allied Trust.  As outlined above, the O'Connors intentionally submitted inflated, inaccurate, or false invoices to Luke Irwin and Allied Trust. Luke Irwin took those same invoices and further increased the inflation, inaccuracies, and falsehoods for the purpose of obtaining the largest possible appraisal award and thereby justify further increased charges by Luke Irwin and Irwin

and Associates, LLC. Allied paid the O'connors sums based on this conspiracy and is entitled to any and all recovery from each co-conspirator.

64.

As a result of the aforementioned civil conspiracy and associated conduct, the Oconnors, Luke Irwin, and Irwin and Associates are liable in solido for any damages sustained as a result of its violations of LSA-C.C. art. 2324, including, but not limited to specific and general damages.

65.

As further evidence of the civil conspiracy, Allied Trust asserts that the O'Connors have actively withheld production of relevant and necessary documents and information on multiple occasions through this case. This includes, but is not limited to, the production of a large amount of repair receipts two days before trial on this case.

66.

Similarly, Allied Trust asserts that Luke Irwin and Irwin and Associates have actively withheld production of relevant and necessary documents and information on multiple occasions through this case. This includes, but is not limited to, Irwin's refusal to produce documents in response to multiple subpoenas.

67.

Upon information and belief, Allied Trust asserts that such actions were for the purpose of further concealing the true nature of the damages claimed in furtherance of a civil conspiracy.

## DAMAGES AND JURY DEMAND

68.

Allied Trust is entitled to the following damages for the cause of actions against Counterclaim Defendants and Third-Party Defendants alleged herein:

1.  Reimbursement for all insurance proceeds paid as a part of scheme to defraud Allied Trust;

2.  Damages pursuant to all Louisiana Revised Statutes;

3.  Attorneys' fees;

4.  Court costs;

5.  Interest;

6.  Punitive damages, if applicable; and

7.  Any relief this Honorable Court deems fair and equitable.

69.

Allied Trust requests a trial by jury on all issues so triable.

**WHEREFORE**, Allied Trust, prays that this Counterclaim and Third-Party Claim for Damages be deemed good and sufficient and after due proceedings are had, that (1) there be judgment herein in favor of Allied Trust and against Sean and Allyson O'Connor, Luke Irwin, and Irwin and Associates in the amount of $836,574.92 plus judicial interest and costs, (3) for a trial by jury, and (3) for all other general and equitable relief appropriate under the circumstances.

Respectfully submitted,

*/s/ Matthew Monson*
**MATTHEW D. MONSON (25186)**
**RACHEL L. FLARITY (33131)**
**JOHN D. MINEO, IV (36587)**
**ERIN W. BERGGREN (37551)**
**KYLE C. MATTHIAS (38338)**
**AUSTIN T. WELCH (40100)**
**THE MONSON LAW FIRM, LLC**
5 Sanctuary Blvd., Ste. 101
Mandeville, Louisiana 70471
Telephone:     (985) 778-0678
Facsimile:     (985) 778-0682
*Email:  Matt@MonsonFirm.com*

**MICHAEL E. HILL (25708)**
Email: mhill@kelleykronenberg.com
**JEANNE ARCENEAUX (36035)**
Email: jarcenaux@kelleykronenberg.com
**KELLEY KRONENBERG, PA**
400 Poydras St., Ste. 2400
New Orleans, Louisiana 70130
Telephone:     (504) 208-9055
***Counsel for Allied Trust Insurance Company***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served on all counsel of record by email, facsimile and/or mailing a copy of same in the U.S. Mail, properly addressed and postage prepaid, this 22nd day of July 2024.

*/s/Matthew Monson*