UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEAN O'CONNOR AND ALLYSON O'CONNOR | * | CIVIL ACTION NO. 23-218 |
| | * | |
| | * | SECTION: "O"(1) |
| VERSUS | * | |
| | * | JUDGE BRANDON S. LONG |
| ALLIED TRUST INSURANCE COMPANY | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

This is a Hurricane Ida property damage lawsuit that includes a counterclaim and third party demand by the insurer, who alleges fraud and conspiracy between the plaintiffs and their appraiser. Before the Court are defendant Allied Trust Insurance Company's Motion to Compel Luke Irwin (Rec. Doc. 226) and Motion to Compel Irwin and Associates, LLC (Rec. Doc. 224). The Court resolved some of the issues raised by these motions at oral argument on August 27, 2025. The remaining issues are addressed by this Order and Reasons.

Background

This case arises out of property damage to the home of plaintiffs Sean O'Connor and Allyson O'Connor. They claim that following Allied's adjustment of their claim and the parties' participation in the appraisal process, over $1,000,000 remains in dispute. They filed suit on January 17, 2023, seeking damages and statutory penalties for Allied's alleged bad faith.

In February 2024, plaintiffs disclosed numerous additional documents on the eve of trial and, as a result, the trial was continued. Discovery was reopened for limited purposes, including discovery to the appraiser Luke Irwin and his company Irwin and Associates (together "Irwin"). In July 2024, Allied filed a third party complaint naming the two as defendants and accusing them

1

of fraud and filed counterclaim against the plaintiffs accusing them, among other things, of a civil conspiracy with Irwin.

Allied alleges that the plaintiffs retained Irwin as their appraiser and that Irwin provided an estimate for damages that included total damages of $1,994,576.53. It submits that this represents a 68% increase in alleged damages from the estimate by the public adjuster the plaintiffs had first retained. Allied's appraiser submitted an estimate of $756,646.68 in total damages. Irwin and the umpire (selected by the two appraisers) signed an appraisal award for a total of $1,285,958.42 in damages.

Allied alleges that Irwin's estimates were improperly inflated. It submits that Irwin originally sought to enter a Ranged Flat Fee Appraisal contract that would have made Irwin's fee contingent on the amount of damages included in Irwin's estimate. Instead, the plaintiffs agreed to pay Irwin a rate of $250 per hour, with a caveat that Irwin could waive any fees beyond 13% of the full value of the appraisable valuation. Allied alleges that the majority of the work on the appraisal was performed by James Rupert, who was paid approximately $15,000 his work. Yet, Irwin invoiced over $79,000, including a purported 147 hours of work at $250 per hour, imaging of the 3,000 square foot home for $22,074.06, and $12,500 for a building consultant (apparently Mr. Rupert). Allied alleges on information and belief that Irwin spent less than 4 hours working on the property. Allied alleges that Irwin manipulated the Xactimate estimate to increase the value of the estimate and influence the appraisal process. It alleges that Irwin's actions were intended to inflate the appraisal estimate and to justify the amounts Irwin charged for the appraisal.

Trial is set to begin on May 23, 2026. The deadline to complete discovery is January 7, 2026.

The present motions to compel concern Allied's discovery requests to Mr. Irwin and Irwin and Associates. As noted, a number of the issues raised therein were resolved at oral argument. The remaining issues are addressed herein.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

"[R]elevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Rangel v. Gonzalez Mascorro, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (quoting Khodara Env't II, Inc. ex rel. Eagle Env't II, L.P. v. Chest Twp., No. CIV.A. 3:2002-96, 2007 WL 2253606, at *1 (W.D. Pa. Aug. 3, 2007)). Although the standard for relevance in discovery is broader than in admissibility for trial, it does not justify fishing expeditions and some threshold showing of relevance must be made. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

The Rule provides for consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

2. *Analysis*

    a. *Information about costs incurred.*

Allied seeks documents evidencing amounts paid for services rendered by others related to plaintiffs' claim and documents reflecting any costs related to creation of the estimate. See Requests for Production 9, 39-41 to Irwin and Associates; Requests for Production 18 to Mr. Irwin; Interrogatory 20 to Irwin and Associates. Its concerns arise out of the $79,925.92 invoice Irwin and Associates submitted to the plaintiffs. The invoice includes the following charges: $22,074.06 for "DocuSketch / Matter Port Imaging / Sketch Per SF (W+C+F)," $12,500 for "Mitigation / Building Consultant (Fee TBD)," $3,875 for "Moisture Mapping Report Per Room," and $2,327.94 for "Administrative Billing Service Fee." Allied is primarily seeking documents showing the amount charged to Irwin for each of these line items that were passed through to the plaintiffs. In addition to documents, Allied asks Irwin and Associates to identify the administrative billing service used and to describe all agreements with that service in detail.

Irwin argues that the requested documents are irrelevant because Allied is not liable to reimburse the amounts Irwin actually paid. And, indeed, Allied conceded that whether an appraiser overcharges a homeowner would typically be an issue between the homeowner and the appraiser. But this case, Allied insists, is different. Allied argues that Irwin inflated the charges on its invoice to the plaintiffs to reflect the high appraisal value that it assessed, similar to the contingency fee agreement that Irwin first presented to the plaintiffs. Allied's theory is that Irwin had a financial incentive to exaggerate the appraisal estimate in exchange for a higher bill to the homeowners. Allied argues that documentation underlying the costs on the invoice will show whether the amounts on the invoice are unreasonable and manipulated.

The Court agrees with Allied that the documents concerning amounts paid for services rendered by others, including the specifically identified line items on the invoice, are relevant to Allied's claims. Further, the Court is not convinced that it would be an undue burden for Irwin to produce the requested documentation or to respond to the interrogatory requesting information about the administrative billing service and its agreements with the same. The requests are proportionate with the needs of the case. Irwin shall produce the requested documents and respond to the interrogatory.

b. *The relationship between Irwin and plaintiffs' counsel*

Allied seeks information about Irwin's relationship with plaintiffs' counsel (the firm Hair Shunnarah). At oral argument, the Court already ordered Irwin to produce its contracts with Hair Shunnarah, finding these relevant to the alleged conspiracy between plaintiffs and Irwin to inflate the appraisal value. Irwin's fee arrangements in other cases handled by Hair Shunnarah may shed light on what occurred here. And certainly, any sort of referral arrangement between Irwin and Hair Shunnarah could reveal the type of financial incentive for Mr. Irwin to inflate appraisals as Allied alleges. Mr. Irwin asked that his personal contract with Hair Shunnarah for his Hurricane Zeta claim be excluded. The Court finds, however, that this contract may reveal whether the parties' relationship resulted in a discount for legal services. This could implicate the improper financial incentive that Allied alleges. And such fee agreements are usually not subject to an attorney-client privilege. Taylor Lohmeyer L. Firm P.L.L.C. v. United States, 957 F.3d 505, 510 (5th Cir. 2020). Mr. Irwin must include this contract in his production.

For the same reasons, the Court finds that Irwin and Associates must respond to Allied's Interrogatories 14 and 15 regarding its relationship and agreement with Hair Shunnarah.

5

c. *Other lawsuits*

At oral argument, the Court ordered Irwin to produce documentation reflecting disciplinary actions and investigations involving complaints of inflated appraisals, misrepresentation of fees charged, or use of a contingency fee. Allied has also requested Irwin and Associates to describe every lawsuit it has been involved in and requested that Mr. Irwin produce all documents related to any lawsuit he has been involved in, both over the past ten years. This would extend to any lawsuit where Mr. Irwin served as an expert, any lease dispute involving Irwin and Associates, and even any domestic or succession related lawsuit involving Mr. Irwin. As written, the request is disproportionate with the needs of the case. Allied argues merely that the requested lawsuits could provide insight into its claims, Irwin's credibility, potential conflicts of interest, inconsistencies in prior testimony or methodologies, and whether those lawsuits involve insurance companies or alleged improprieties/misconduct by Irwin.

The Court finds Request for Production 46 to Mr. Irwin and Interrogatory 19 to Irwin and Associates are relevant, but only to the extent such other lawsuits involve alleged improprieties or misconduct of Irwin related Irwin appraisals. The Request for Production and Interrogatory will be limited to such lawsuits. The Request for Production of documents is further limited to production of the complaint or petition in such lawsuits. Allied can locate any remaining documents in the public record.

d. *Insurance claims by Irwin*

Allied also seeks insurance claims made by Mr. Irwin over the past ten years. It argues this information is relevant to his prior conduct with insurance companies. The Court disagrees. Mr. Irwin's conduct as an appraiser is at issue in this lawsuit, not his conduct as it concerns his own insurance claims. Mr. Irwin will not be required to respond to Request for Production 45.

6

   e. *<u>Appraisal contracts implicated in this case</u>*

  Interrogatory 20 asks Mr. Irwin to describe the circumstances regarding the negotiation and ultimate agreement upon the Hourly Appraisal Contract he and the plaintiffs entered into on May 20, 2022. It is undisputed that Mr. Irwin first presented the plaintiffs with the Ranged Flat Fee Appraisal Contract (providing for payment on a contingency basis) before ultimately signing the Hourly Appraisal Contract with them. How and why Mr. Irwin and the plaintiffs ended up agreeing to the Hourly Appraisal Contract is central to Allied's theory that Mr. Irwin had an improper financial incentive to inflate the appraisal. The Court finds that a description of the negotiation of and agreement to the Hourly Appraisal Contract executed in this case is relevant and proportional to the needs of the case. As to the associated Interrogatory 19 asking Mr. Irwin to identify individuals that reviewed the contract and objected to it, Mr. Irwin submitted at oral argument that his production of emails regarding the negotiation would sufficiently address the interrogatory. The Court finds this an acceptable resolution at this time.

  Allied also asks Mr. Irwin to describe the creation of the Hourly Appraisal Contract (Interrogatory 20) and the Ranged Flat Fee Appraisal Contract (Interrogatory 21), including who initially drafted it, when it was drafted, alterations made since its creation, and recommendations or advice provided regarding it. Mr. Irwin argues these interrogatories are irrelevant. The Court disagrees. The history of these contracts is relevant to their use in the present case. Mr. Irwin argues that a response would be unduly burdensome, pointing out that he would have search all his correspondence to determine if he was ever given any recommendations regarding the contracts and would have to review every contract he has signed to see if changes had ever been made. The Court shares Mr. Irwin's burdensomeness concern. Interrogatories 20 and 21 shall be limited to require Mr. Irwin to describe when each contract was created and by whom, along with whether

other versions of the contracts exist and, if possible, the dates the other versions were in use, how they differed from the versions implicated in this case, and why changes were made. At this time, he will not be required to describe changes made on a client by client basis or recommendations and advice that may have been received on an ad hoc basis in random emails.

Finally, Allied requests production of the form of any contracts used by Mr. Irwin as an appraiser or umpire in Louisiana since 2015. Mr. Irwin did not serve as an umpire in this case and no umpire contracts are at issue, thus the Court finds umpire contracts are not relevant. However, the Court finds Allied's request is relevant as to appraisal contracts for the same reason that information about the origins and earlier versions of the Hourly Appraisal Contract and the Ranged Flat Fee Appraisal Contract implicated in this case are relevant. Mr. Irwin argues the request is burdensome because it would implicate contracts for all claims over a ten year period. But the request is limited to "form" contracts. There is no reason to believe that Mr. Irwin created a bespoke contract for every claim he handled as an appraiser or umpire. Mr. Irwin does not claim that it would be unduly burdensome to locate and produce the *form* contracts, and the Court finds that it would not be. Mr. Irwin must respond to Request for Production 40 and produce his form appraisal contracts for use in Louisiana since 2015.

  f. *Organizational documents*

Allied requests organizational and management documents for Irwin and Associates, including its Articles of Organization, Operating Agreement, company bylaws, and Statement of Business Purpose. It argues these documents are relevant to "determining ownership and control, identify potentially responsible parties, determining duties and decision-making procedures, potential misuse of company structure, etc." Irwin and Associates responds that there is no allegation that the company structure was misused and because it is a limited liability company,

its members are not "potentially responsible parties." At oral argument, Allied argued that the documents are relevant to show how individuals were compensated for their work (or even if they did no work) on appraisals, which could show a financial incentive to inflate the appraisal.

While documents showing how certain individuals get paid out of the income from appraisals might be relevant, it is unclear that Request for Production 43 extends to such contracts, and the request certainly extends far beyond such contracts. The organizational documents listed as examples in the request appear to be wholly irrelevant. Irwin and Associates will not be required to respond to Request for Production 43.

    g.  *Costs*

Allied requests its costs in filing this motion. The Court finds that an award of costs is not called for at this time.

## Conclusion

For the foregoing reasons, Allied's Motions to Compel are hereby GRANTED in part and DENIED in part. Mr. Irwin shall be required to respond to: Request for Production 18, 40 (as limited above), 46 (as limited above) and Interrogatories, 20, 21 (as limited above), 22 (as limited above). Mr. Irwin must also produce his contract with Hair Shunnarah for his Hurricane Zeta claim. Mr. Irwin will not be required to respond to Request for Production 45. Irwin and Associates shall be required to respond to: Requests for Production 9, and 39-41 and Interrogatories 14, 15, 19 (as limited above), and 20. Irwin and Associates shall not be required to respond to Request for Production 43. All production ordered herein shall be made within 30 days. Fees will not be awarded at this time.

New Orleans, Louisiana, this 8th day of September, 2025.

                                                Janis van Meerveld
                                    United States Magistrate Judge