## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**SEAN O'CONNOR, ET AL.**                                      **CIVIL ACTION**

**VERSUS**                                                     **NO. 23-218**

**ALLIED TRUST INSURANCE COMPANY**                             **SECTION "O"**

### ORDER AND REASONS

Before the Court is a motion[1] to dismiss filed by Third-party Defendants Luke Irwin and Irwin & Associates, LLC. Third-party Defendants seek to dismiss the claims asserted by Allied Trust Insurance Company in its third-party demand.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

This case arises from Plaintiffs Sean and Allyson O'Connor's claim that Defendant Allied Trust Insurance Company ("Allied Trust") failed to timely and adequately pay them proceeds due under their homeowner's insurance policy for damage their home suffered during Hurricane Ida. The O'Connors assert that Allied Trust breached the homeowner's policy and violated two Louisiana insurance-penalty statutes, La. Rev. Stat. §§ 22:1892 & 22:1973.[3]

---

[1] ECF No. 206.
[2] ECF No. 184.
[3] *See generally* ECF No. 1.

In February 2024, Plaintiffs disclosed numerous additional documents on the eve of trial and, as a result, the trial was continued.[4] Discovery was reopened for limited purposes, including discovery regarding Plaintiffs' appraiser Luke Irwin and his company, Irwin & Associates.[5]

In July 2024, Defendant Allied Trust filed a counterclaim against Plaintiffs and a third-party demand against Irwin and his company.[6] Allied Trust's counterclaim alleges the O'Connors breached their insurance policy by intentionally concealing and misrepresenting facts material to Allied Trust's investigation of the O'Connors' claim.[7] For example, Allied Trust alleges the O'Connors expanded their living space and made betterments as part of the repair and renovation process, including adding a second floor to their single story house, replacing a vinyl fence with a brick and iron fence, and adding and upgrading cabinets, countertops, tiling, and flooring throughout the home.[8] Allied Trust "seeks reimbursement" of the $836,574.92 it has paid Plaintiffs under the policy and damages of "unnecessary costs and fees" incurred.[9]

As for the allegations against Irwin and his company, according to the third-party demand, the O'Connors initially retained a public adjuster, Mark Vinson, who prepared an estimate of damages to the property that totaled $836,533.80 for

---

[4] *See* ECF No. 144 at 1.
[5] *Id.*; *see also* ECF No. 153.
[6] ECF No. 184.
[7] *Id.* ¶¶ 47–55.
[8] *Id.* ¶¶ 16-18.
[9] *Id.* ¶ 54.

Coverage A damages.[10] Defendant Allied Trust then invoked the policy's appraisal clause and chose Mark Harter as its appraiser.[11] The O'Connors selected Luke Irwin of Irwin & Associates as their appraiser.[12] The appraisers named Scott Mauldin as their neutral umpire.[13]

Irwin presented an estimate for damages to Plaintiffs' property of $1,407,055.77 under Coverage A and $1,994,576.53 in total damages, which was 68% higher than Plaintiffs' public adjuster had initially estimated.[14] By contrast, Allied Trust's appraiser, Mark Harter, submitted an estimate of $532,931.38 for Coverage A damages and $756,646.68 in total damages.[15] Irwin and the umpire, Mauldin, ultimately signed an appraisal award for damages of $775,470.28 under Coverage A and $1,285,948.42 in total.[16] Allied Trust's appraiser, Harter, objected to the award's accuracy and refused to sign it.[17]

Allied Trust alleges that Irwin's damages estimate was improperly inflated because Irwin was financially motivated to overestimate the damage to the O'Connors' property to justify charging greater amounts to the O'Connors for his appraisal services. According to the third-party demand, Irwin initially attempted to have the O'Connors execute a "Ranged Flat Fee Appraisal Contract."[18] This contract would have made the amount that Irwin & Associates received in payment directly

---

[10] *Id.* ¶ 26.
[11] *Id.* ¶ 27.
[12] *Id.*
[13] *Id.*
[14] *Id.* ¶¶ 27-28.
[15] *Id.* ¶ 29.
[16] *Id.* ¶ 30.
[17] *Id.*
[18] *Id.* ¶ 42.

contingent upon the amount of damages Irwin included in his final estimate. Ultimately, the O'Connors and Irwin did not sign a direct contingency fee contract. Allied Trust alleges the contract between Irwin and the O'Connors nevertheless provided improper financial incentives to Irwin to overinflate the value of the estimate. The contract provided that:

> Appraiser shall provide professional services in accordance with the agreed upon Scope of Work of working in the duties of an INSURANCE APPRAISER. These services are provided at a rate of $250 per hour, plus any necessary reimbursable expenses*. In an effort to safeguard and protect the policyholder in a good faith effort from any possibility of extensive hours or unreasonable fees, IRWIN & Associates retains the right to rebate and waive any billable hours fees beyond thirteen percent (13%) of the full value of the appraisable valuation.[19]

According to Allied Trust, this contract maintains a "contingency fee basis" that violates La. R.S. 22:1892(G) and the terms and conditions of the Allied Trust Policy, which require an appraisal to be "impartial."[20]

Allied Trust further alleges that the majority of the work on the appraisal was performed by a building consultant, James Rupert, who was paid approximately $15,000 for his work. But Irwin invoiced the O'Connors almost $80,000 in total, including a purported 147 hours of work performed by Irwin himself at $250 per hour for a total of $36,750.00. This figure improperly included intake staff and other administrative roles that would not qualify for the $250 an hour appraiser rate per

---

[19] *Id.* ¶ 43.
[20] *Id.*

4

the terms of the contract.[21] In total, Irwin himself spent less than 4 hours working on the property.[22]

Allied Trust also alleges that Irwin manipulated the "Xactimate" estimate to increase the value of the estimate and influence the appraisal process.[23] It provides specific examples of Irwin and his company improperly inflating the appraisal estimates—despite quotes provided by Plaintiffs showing that the true cost of repairs was for far less—including for the roof replacement, insulation, remediation, and pack-out and pack-in quotes, as well as repairs for areas of the property that did not exist.[24]

According to Allied Trust, these fraudulent estimates tainted the ultimate appraisal award that was signed by Irwin and the umpire, resulting in Allied Trust overpaying the O'Connors for the damage sustained and requiring Allied Trust to incur additional fees and expenses throughout the corrupted process. Allied Trust ultimately alleges that Luke Irwin and his company conspired with the O'Connors to submit these fraudulent invoices and estimates to Allied Trust to inflate the appraisal estimate and receive a higher insurance payout.[25]

## II.  LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not

---

[21] *Id.* ¶ 44.
[22] *Id.*
[23] *Id.* ¶ 45.
[24] *Id.* ¶¶ 28-35.
[25] *Id.* ¶ 63.

meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014) (citation omitted). The Court "need not, however, accept the plaintiff's legal conclusions as true." *Id.* at 502-03; *see also Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.").

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable

6

to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.    ANALYSIS

Defendant Allied Trust's third-party demand appears to assert claims for (1) fraud; (2) civil conspiracy to commit fraud; (3) breach of contract; (4) negligence; and (5) criminal insurance fraud under La. R.S. § 22:1924.[26] Third-party Defendants Irwin and his company argue they are entirely immune from suit under the novel theory of appraiser immunity. They also argue that Defendant Allied Trust has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) for each of its claims. The Court considers these arguments in turn.

### a. Appraiser Immunity

First, the question of immunity from suit. Third-party Defendants argue they are immune from all claims because Irwin and his company were involved in the O'Connors' insurance claim in their capacity as insurance appraisers. Pointing to the immunity several courts have afforded to arbitrators, Third-party Defendants contend the appraisal process is "designed to be akin to arbitration" and argue the same immunity should be afforded to them as insurance appraisers.

The analogy falls short. True, courts in this circuit have indicated that arbitrators may be entitled to arbitral immunity under the FAA. *See, e.g.*, *Jason v. Am. Arb. Ass'n, Inc.*, 62 F. App'x 557 (5th Cir. 2003) (*per curiam*); *Texas Brine Co.*,

---

[26] *See generally* ECF No. 184.

7

*LLC v. Am. Arb. Ass'n, Inc.*, 2018 WL 5773064, at *3 (E.D. La. Nov. 2, 2018) (noting "every circuit to have considered this question has extended quasi-judicial immunity to arbitrators acting in the scope of their duties"), *aff'd on other grounds sub nom. Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020) (declining to opine on the legitimacy of arbitral immunity). And the insurance appraisal process has certain parallels to arbitration: both are contractually agreed-upon dispute resolution processes whose purpose is to "escape the delay and cost and technicality of court procedure." *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 756 (E.D. La. 2010) (citation omitted). One California state court—looking to California's Arbitration Act, which defined "agreement" as including "appraisals"—has even concluded that appraisers are immune from suit. *Lambert v. Carneghi*, 158 Cal. App. 4th 1120, 1129-34 (2008).

But the Fifth Circuit has not extended arbitral immunity to appraisers. In fact, it has emphasized the differences between insurance appraisals and arbitrations. For example, in *Hartford Lloyd's Ins. Co. v. Teachworth*, the court held that an insurance appraisal conducted pursuant to the terms of a Texas multi-peril insurance policy did not constitute an "arbitration" within coverage of the Federal Arbitration Act, 9 U.S.C. §§ 1–15. 898 F.2d 1058, 1059 (5th Cir. 1990). The court took pains to explain why insurance appraisals are "generally distinguished from arbitrations" given the "significant differences between them":

> [A]n arbitration agreement may encompass the entire controversy between the parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the

policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings.

*Id.* at 1061-62.

This Court agrees with the Fifth Circuit and will follow its guidance on this question. The distinctions between insurance appraisal and arbitration—and the role of an appraiser versus that of an arbitrator—are too fundamental to extend full immunity from suit often afforded to arbitrators to insurance appraisers, too. *See id.* The Court accordingly declines to find the Third-party Defendants immune from suit and proceeds to consider whether Allied Trust has stated any claims upon which relief can be granted.

### b. Allied Trust's Fraud Claim

Of the various claims made by Allied Trust, the Court first considers whether Allied Trust has stated a fraud claim against Irwin and his company. Allied Trust alleges that Irwin and his company improperly inflated the estimate of the O'Connors' damage because Irwin sought to justify charging the O'Connors a higher price for his appraisal services. Allied Trust cites several examples of inflated estimates, including estimates that exceeded the amount the O'Connors had already paid for certain repairs, as well as the fact that a building consultant (and not Irwin himself) did the bulk of the work at a discounted rate. Irwin and his company, in turn, assert that Allied Trust's allegations are insufficient to state a claim for fraud. They contend Allied Trust (i) does not plead fraud with particularity and engages in improper group

pleading; (ii) does not adequately allege intent to deceive; and (iii) fails to show that Allied Trust detrimentally relied on any fraudulent statements.

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The required elements to prove fraud in Louisiana are "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008).

State law fraud claims are subject to Fed. R. Civ. P Rule 9(b)'s heightened pleading requirement. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008). Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." The Fifth Circuit interprets Rule 9(b) to require a plaintiff pleading fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339 (citation omitted).

### i. Misrepresentation of a Material Fact

Allied Trust argues that its pleading has satisfied the first element of fraud—*i.e.*, it has adequately alleged Irwin misrepresented material facts under Rule 9(b)—by pointing to its specific allegations of Irwin's overinflated billing practices and estimates of damage.

Third-party Defendants protest that Allied Trust's allegations are insufficient under Rule 9(b) because Allied Trust alleges in part that Irwin and his company are

10

liable "[t]o the extent" any of the O'Connors' alleged misrepresentations or concealments were "committed" or "aided" by them."[27] According to Third-party Defendants, this is "tentative, vague group pleading" that cannot satisfy Rule 9(b)'s stricter requirements because "[w]hen a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying which defendants engaged in what wrongful conduct." *Hawkins v. Sanders*, 2023 WL 2565403, at *3 (E.D. La. Mar. 17, 2023). Third-party defendants further contend that Allied Trust's allegations fail because they do not sufficiently "explain how the statements constitute fraud" which is "fatal to its claim."

The Court disagrees with Third-party Defendants' characterization of Allied Trust's fraud allegations. In *Hawkins*, the court dismissed the plaintiffs' allegations and causes of actions that were generally asserted against "all Defendants" without distinguishing between the "numerous defendants." *Id.* at *1, 3 (dismissing without prejudice all causes of actions against *inter alia* "all Defendants" and "all named Defendants" for "impermissible group pleading and failing to specify how the City specifically violated Plaintiffs' rights"). Allied Trust, by contrast, makes numerous particularized allegations about Irwin and his company specifically that are sufficiently anchored by details of time, place, and contents of the allegedly false representation. For example, Allied Trust alleges:

- Irwin's appraisal estimate assessed that $94,216.48 was required for the O'Connors' roof replacement, even though the roof had already been

---

[27] ECF No. 206 at 5 (citing ECF No. 184 ¶¶ 57-58).

replaced three months prior to the appraisal inspection for $50,934.52. Irwin was aware of this discrepancy because Sean O'Connor informed Irwin via email on October 19, 2022 that "[m]y roof is done and paid for and the cost of the roof came in around 52k."[28]

- The O'Connors submitted to Irwin quotes from Cornerstone for pack-out and pack-in of contents. At the time of appraisal, pack out had already been completed. Those quotes totaled $56,150.52. Luke Irwin included these quotes in his appraisal estimate but increased their value to $78,517.62 by adding overhead and profit, including for work that had already been completed.[29]

- The O'Connors received a bid for insulation work from Wilserv Corp for $23,531.00. Irwin and Irwin & Associates, as well as the umpire, received this bid, but nevertheless inflated the insulation line items to $51,599.10, even after Sean O'Connor flagged the discrepancy for Irwin in an October 19, 2022 email.[30]

- Although the appraisal contract was executed by Luke Irwin, the vast majority of the appraisal work was completed by a "building consultant" named James Rupert. The named and licensed appraiser, Irwin, "spent less than four hours working on this appraisal himself" though his invoice "asserts Irwin and Associates did 147 hours of work at $250.00 an hour, for a total of $36,750.00."[31]

At the pleading stage, the Court must accept these allegations as true. *See Thompson*, 764 F.3d at 502. These allegations are adequately particular to put Irwin and his company on notice of their alleged fraud. *See Gordon v. City of New Orleans*, 2024 WL 4346404, at *3 (E.D. La. Sept. 30, 2024). That is because they lay out the who (Irwin and his company), what (specific examples of allegedly fraudulent assessments of the damage to the O'Connors' home), when (the appraisal estimate and particular dates of emails flagging the discrepancies), where (the O'Connors'

---

[28] ECF No. 184 ¶ 32.
[29] *Id.* ¶ 36.
[30] *Id.* ¶ 34.
[31] *Id.* ¶¶ 40-41.

home), and why (allegations that the already-completed repairs, or submitted quotes for repairs, were far less than Irwin's appraisal estimates) to explain the basis of the allegedly fraudulent statements. *See Dorsey*, 540 F.3d at 339. These allegations adequately satisfy Rule 9(b)'s heightened pleading standard for the first element of a fraud.

### ii.  Intent to Deceive

Allied Trust contends that it has adequately pled intent to deceive—the second required element for fraud in Louisiana—by alleging that Irwin and his company charged the O'Connors a roundabout contingency fee arrangement. According to Allied Trust, this inappropriately motivated Irwin and his company to overbill the O'Connors and inflate the appraisal estimate in violation of the insurance contract's requirement that an appraiser be "impartial."[32] Allied Trust points to the language of the contract between the O'Connors and Irwin & Associates, which provided: "[i]n an effort to safeguard and protect the policyholder in a good faith effort from any possibility of extensive hours or unreasonable fees, IRWIN & Associates retains the right to rebate and waive any billable hours fees beyond thirteen percent (13%) of the full value of the appraisable valuation."[33] Allied Trust alleges this provision gave Irwin and his company "an illegal financial interest in the outcome of the matter and incentivized excessive billing and estimates."[34]

---

[32] ECF No. 207 at 5; ECF No. 184 ¶¶ 42-43.
[33] ECF No. 184 ¶ 43.
[34] *Id*.

Irwin and his company protest this was not a contingency fee at all, and that this fee structure could not have provided any "nefarious motive."[35] Instead, the Third-party Defendants assert this provision of the contract simply provided Irwin a way to exercise "billing judgment" in "fairness to [his] clients" by providing Irwin a mechanism to "lower [his clients'] bill if the amount charged [was] unreasonable in comparison to the final appraisal evaluation."[36]

But in clarifying that Irwin was reserving the right to lower his client's bill if the amount charged was "unreasonable *in comparison to*" the final appraisal, Irwin confirms that the reasonableness of his hourly billing practices *depended on* whether he secured a commensurately high "final appraisal evaluation" for the client.[37] Put differently, Irwin could justify charging a client overinflated hourly fees[38] if he ultimately garnered that client a higher appraisal evaluation. But he needed a method to "reimburse"—or to cap the fee of—an over-charged client whose ultimate appraisal value was lower than justifiable when compared to the hourly fees the client was charged.

As alleged here, this bears resemblance to a straightforward contingency fee that directly reimburses the homeowner's appraiser a percentage of the ultimate

---

[35] ECF No. 208 at 2.

[36] *Id.* (emphasis omitted).

[37] By contrast, a flat fee or a pure hourly billing arrangement would more readily guarantee the appraiser was "impartial" because their fee would be entirely divorced from the final appraisal value.

[38] Allied Trust alleges that Irwin charged the O'Connors almost $80,000 for his services. ECF No. 184 ¶ 40. "The invoice asserts Irwin and Associates did 147 hours of work at $250.00 an hour, for a total of $36,750.00." *Id.* The remaining portions of the invoice include $22,074.06 for Matterport imaging of a "completely gutted" property, a $3,875.00 charge for moisture mapping, and a $12,500.00 charge for a building consultant. *Id.*

award. And such contingency fees have led courts to strike appraisers or appraisal awards because the appraiser is not impartial. *See, e.g.*, *Chardonnay Vill. Condo. Ass'n, Inc. v. James River Ins. Co.*, 2008 WL 3285908, at *1 (E.D. La. Aug. 9, 2008) (striking appraiser whose contract "more closely resembles a contingency fee contract which impermissibly renders him a partial, interested party"); *Kennedy v. GeoVera Specialty Ins. Co.*, 2024 WL 4870328, at *1 (E.D. La. Nov. 22, 2024) (striking appraisal award because defendant Irwin's fee—the same Irwin as in this case— "increases as its valuation of loss increases"). These allegations of improper financial motive that violate the policy's requirement that the appraiser be "impartial" are sufficient to supply an intent to deceive at the pleading stage under Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

### iii. Justifiable Reliance and Resultant Injury

The final element of a fraud claim requires the plaintiff to allege the defendant "caus[ed] justifiable reliance with resultant injury." *Kadlec Med.*, 527 F.3d at 418. Third-party Defendants argue the fraud claim must be dismissed because Allied Trust "never alleges that it paid the O'Connors based on Mr. Irwin's valuation" given that "Allied Trust invoked the appraisal process, which resulted in an appraisal award by an umpire."[39]  Pointing to Allied Trust's statement in its opposition to the motion to dismiss, in which it admitted "[p]arties do not pay their opposing appraiser's position," Third-party Defendants contend "Allied Trust does not allege

---

[39] ECF No. 206 at 6-7.

that it relied on the alleged misrepresentations in Mr. Irwin's estimate by, for example, paying the allegedly 'inflated' estimate."[40]

The Court disagrees. The crux of Allied Trust's fraud claim is that it paid the O'Connors sums of money based on an inflated appraisal award because Irwin and his company made "misrepresentations and suppressions [that] corrupted the appraisal process and tainted the ultimate umpire award," which caused Allied Trust to "sustain[] financial damages," including the costs involved in the umpire process.[41] In other words, Allied Trust does not allege that it was damaged because it directly paid *Irwin's* appraisal estimate. Instead, Allied Trust alleges that its reliance on Irwin's supposedly "impartial" but in fact fraudulent estimates—which underpinned and tainted the umpire's final appraisal award and process as a whole—in turn damaged Allied Trust because it paid the O'Connors in reliance on that tainted award. *See, e.g.*, ECF No. 184 ¶ 59 ("Luke Irwin and Irwin and Associates, LLC purposefully and improperly inflated invoices and estimates for the sole purpose of enlarging the appraisal position. This intentional misrepresentation of the damage sustained was aimed at coercing Allied Trust to pay insurance proceeds that were not incurred and were not owed."); *id.* ¶ 63 ("Luke Irwin took those same invoices and further increased the inflation, inaccuracies, and falsehoods for the purpose of obtaining the largest possible appraisal award . . . Allied paid the O'[C]onnors sums based on this conspiracy[.]").[42]

---

[40] ECF No. 208 at 3.
[41] ECF No. 207 at 9.
[42] Indeed, Allied Trust offers specific examples of when Irwin's allegedly fraudulent estimates were "ultimately included in the umpire's position." *See, e.g.*, *id.* ¶ 33 ("The invoice for this work was

The specific allegations here that Luke Irwin and his company corrupted a process and final award in which they were contractually obligated to act "impartial[ly]"[43]—a process on which Allied Trust relied to its detriment when it paid the O'Connors and incurred other costs—are sufficient to state a claim for fraud under these facts. The Court accordingly finds that Allied Trust's allegations of fraud are pled with sufficient particularity to survive the motion to dismiss.

### c. Allied Trust's Civil Conspiracy Claim

Next, the Court considers whether Allied Trust has stated a claim for civil conspiracy to commit fraud against Irwin and his company. Allied Trust alleges that Irwin and his company conspired with the O'Connors to induce Allied Trust into overpaying the O'Connors' claim by fraudulently inflating the appraisal estimate.

The actionable element of a civil conspiracy claim is the "tort which the conspirators agree to perpetrate and which they actually commit in whole or in part." *In re Willow Bend Ventures, LLC*, 2019 WL 2289460, at *5 (E.D. La. May 28, 2019) (citation omitted). To recover under a theory of civil conspiracy, "a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result." *Id.* (citation omitted). Proof of a conspiracy "may be inferred from the defendant's knowledge of the impropriety of the actions taken by

---

provided to Luke Irwin of Irwin and Associates, LLC and to the umpire, Scott Mauldin . . . [Irwin] improperly added overhead and profit inflating the already incurred and paid amount to $217,664.80," which was "brought to Mr. Irwin's attention by Mr. O'Connor on October 19, 2022" but nevertheless "ultimately was included in the umpire's position for $200,921.36.").

[43] ECF No. 184 ¶ 42 (noting the "the terms and conditions of the Allied Trust Policy . . . require an appraisal to be "impartial.").

a co-conspirator" and may "be proven by circumstantial evidence, including highly suspicious facts and circumstances." *Khoobehi Properties, L.L.C. v. Baronne Dev. No. 2, L.L.C.*, 19-278 (La. App. 5 Cir. 12/18/19), 288 So. 3d 224, 232-33. Rule 9(b)'s heightened pleading requirements apply to claims alleging a conspiracy to defraud. *See Sw. La. Healthcare Sys. v. MBIA Ins. Corp.*, 2006 WL 2548183, at *4 (W.D. La. Aug. 31, 2006).

Irwin and his company argue that Allied Trust fails to allege it conspired with the O'Connors to commit fraud for two reasons. First they contend that Allied Trust "offers only the conclusory allegation that the O'Connors submitted inflated, inaccurate, or false invoices to both Mr. Irwin and Allied Trust and then, separately, Mr. Irwin further increased the inflation, inaccuracies, and falsehoods," which "do not constitute an agreement to commit fraud."[44]

The Court disagrees. Having already found that Allied Trust has adequately stated a claim for fraud against Irwin and his company, it finds that Allied Trust offers numerous examples, pled with particularity, of which it is inferable that Irwin was acting in concert with the O'Connors to commit fraud. This includes specific (and not conclusory) allegations that the O'Connors submitted inflated estimates for repairs to Irwin—including for parts of the house that did not exist, or for repairs that had already taken place—and of Irwin, in turn, inflating those estimates further. For example, the third-party demand alleges the O'Connors submitted a quote to Irwin as part of the appraisal process from Baton Rouge Custom Cabinets, LLC,

---

[44] ECF No. 206 at 12.

which included "[t]he purchase of new cabinets that were not in existence prior to Hurricane Ida."[45] The demand alleges Irwin not only accepted that fraudulent quote and "included this quote in his estimate," but also that he inflated it further, from $102,467.19 to $146,128.20, and that he then "included an additional $80,503.39 in cabinets for a total of $226,611.59."[46] In a similar vein, Allied Trust alleges the O'Connors submitted a quote for insulation to Irwin that included "additions to the newly built second floor that [was] not related to the damage to the property," and that Irwin not only "included this bid item in his estimate" but also inflated the final insulation figure even further to $51,599.10.[47] These circumstances are sufficient to infer Irwin's knowledge of and participation in the O'Connors' alleged scheme to fraudulently raise their appraisal value. *See Khoobehi Properties*, 288 So. 3d at 232-33.

Third-party Defendants further contend that Allied Trust does not allege "any" specific facts to "support the threshold allegation that the parties entered into any agreement" to commit fraud.[48] But the third-party demand alleges the contingency fee arrangement between the O'Connors and Luke Irwin and Irwin & Associates was the agreement underpinning the conspiracy. Allied Trust asserts that Irwin and the O'Connors "agreed to" a contract that was designed to financially "incentivize[]" Irwin and his company to "excessive[ly] bill[]" the O'Connors.[49] In return, the contract

---

[45] ECF No. 184 ¶ 22.
[46] *Id.* ¶ 37.
[47] *Id.* ¶ 34.
[48] ECF No. 206 12.
[49] ECF No. 184 ¶ 43.

financially motivated both Irwin and the O'Connors to garner an "excessive" appraisal estimate.[50] Thus, the O'Connors and Irwin were together motivated to (and did) inflate the damage estimates to "obtain[] the largest possible appraisal award," in violation of Allied Trust's insurance policy, which required the appraiser be "impartial."[51] The mutually beneficial financial incentives for both the O'Connors and Irwin to inflate the damage estimates, coupled with the specific allegations that both the O'Connors and Irwin were aware that they were submitting fraudulent estimates to the umpire, is sufficient "circumstantial evidence" of "highly suspicious facts and circumstances" to "infer[]" a conspiracy to commit fraud at the pleading stage. *Khoobehi Properties*, 288 So. 3d at 232-33.

The Court accordingly finds that, at this pleading stage in the litigation and under the facts alleged here, Allied Trust has adequately pled a claim of a conspiracy to defraud between the O'Connors and Irwin and his company.

### d. Allied Trust's Breach of Contract Claim

Allied Trust next asserts that Irwin and Irwin & Associates are liable for breach of contract in their capacity as representatives of the O'Connors.[52] Allied Trust alleges Irwin and his company breached the insurance contract—the contract that the O'Connors held with Allied Trust, and to which Irwin and his company were not a party—because "Irwin agreed to act on behalf of the insureds as their appraiser and therefore to act in accordance with the terms of appraisal."[53]

---

[50] *Id.*
[51] *Id.* ¶¶ 63, 43.
[52] *Id.* ¶ 57.
[53] ECF No. 207 at 14.

Allied Trust cannot prevail on this claim. Under Louisiana law, a plaintiff pleading breach of contract must adequately allege: "(1) defendant owned him an obligation; (2) defendant failed to perform the obligation; and (3) defendant's failure to perform resulted in damage to the plaintiff." *Stipp v. MetLife Auto & Home Ins. Agency, Inc.*, 2017-61 (La. App. 5 Cir. 8/30/17), 225 So. 3d 1182, 1189. Crucially, there can be no claim for breach of contract "[i]n the absence of privity of contract between the parties." *Travers v. Chubb European Group SE*, 714 F. Supp. 3d 812, 817 (E.D. La. 2024); *see also A & E Engine and Compression, Inc. v. Miss-Lou Petroleum, LLC*, 2009-1254 (La. App. 1 Cir. 3/19/10), 2010 WL 1005870, at *2 ("[N]o action for breach of contract may lie in the absence of privity of contract between the parties.").

Allied Trust does not allege the existence of a contract between it and Luke Irwin or Irwin & Associates. Instead, Allied Trust argues that as a "*representative* of the insured"—*i.e.*, as a representative of the O'Connors—Irwin and his company "can and did breach the subject contract of insurance with Allied Trust."[54] This misses the mark. Irwin and his company's actions could potentially be imputed to the party they represented under the contract—here, the O'Connors. But Irwin and company's actions cannot form an independent cause of action for breach of a contract to which they were never a party. *See, e.g.*, *Pearl River Basin Land & Dev. Co. v. State ex rel. Governor's Office of Homeland Security and Emergency Preparedness*, 2009-0084 (La. App. 1 Cir. 10/27/09), 29 So. 3d 589, 593 ("The fact that Pearl River may have a

---

[54] ECF No. 207 at 14.

contract with IED and/or Shaw, who in turn, have separate contracts with the Parish, does not create a contract or privity of contract between Pearl River and the Parish.").

In response, Allied Trust cites La. R.S. § 22:1892, which establishes that certain acts, "if knowingly committed or performed by an insured, claimant, or *representative* of the insured or claimant, constitutes a breach of *insured's* duties." *Id.* § 22:1892(J)(2) (emphasis added). In other words, under the statute, a violative act committed by Irwin as a representative of the O'Connors would constitute a breach of the *O'Connors'* duties under the contract they hold with Allied Trust. Indeed, the statute specifies that the "duty imposed by this Subsection does not create a separate cause of action . . ." *Id.* at § 22:1892(J)(3). Rather, if the insured's representative breached a duty under the statute, "the trier of fact shall consider that conduct in determining whether or not the insured is to be awarded penalties or attorney fees[.]" *Id.* at § 22:1892(J)(4). It does not, however, create contractual privity between the insurer and the insured's representative such that the insured's representative could be held liable for breach of contract. Accordingly, this claim is dismissed.

### e. Allied Trust's Negligence Claim

The Court next considers whether Allied Trust has stated a negligence claim against Irwin and his company. To establish negligence under Louisiana law, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a

legal cause of the plaintiff's injuries; and (5) the plaintiff was damaged. *See Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1111.

Irwin argues that Allied Trust's negligence claim fails because neither Irwin nor his company owed any duty in tort to Allied Trust. The Court agrees.

Under Louisiana law, "there is generally no cause of action against an insurance adjuster for processing and handling an insurance claim." *Bellina v. Liberty Mut. Ins. Co.*, 2020 WL 1689825, at *3 (E.D. La. Apr. 7, 2020) (collecting cases). "[D]isagreement with [the] method of adjusting claims and ultimate claims decision," by itself, "cannot form the basis of a claim against [an adjuster] under Louisiana law." *Id.* (citation omitted). Indeed, "[e]ven when an adjustor's investigation is substandard, the independent adjuster owes no duty 'to an insured to conduct a proper investigation.'" *Goux Enterprises v. Indian Harbor Ins. Co.,* 741 F. Supp. 3d 478, 486 (E.D. La. 2023) (citation omitted). This is presumably to avoid situations where disgruntled plaintiffs bring negligence claims for "substandard" investigations against appraisers simply because they disagree with the evaluation. *See id.* ("Although plaintiffs disagree with Sedgwick's determinations of plaintiffs' loss, such disagreements cannot form the basis of a claim against an adjuster under Louisiana law.") (cleaned up).

Given the similar roles played by appraisers and adjusters, the Court finds this logic extends to appraisers, too. The Court accordingly finds that Allied Trust cannot plead a claim for negligence against Irwin and Irwin & Associates because Irwin, as

an insurance appraiser, did not have an independent duty to Allied Trust to conform his conduct to a specific standard of care.[55]

The Court notes that there is an exception to this general rule where an adjuster engages in fraudulent misrepresentation. *Bellina*, 2020 WL 1689825, at *3 ("[a]n insurance adjuster may be held liable under Louisiana law . . . 'where he has engaged in fraud toward the claimant'") (citation omitted). Courts distinguish between cases in which a participant in the adjustment process merely has a "disagreement with [the adjuster's] method of adjusting claims and ultimate claims decision" and cases in which an adjuster provides "false information" and "has reason to know that the claimant will rely on that information." *Hadleigh-W. v. Selective Ins. Co. of the Se.*, 2022 WL 824423, at *3 (E.D. La. Mar. 18, 2022). Allied Trust's demand, for the reasons cited above, satisfies the exception for pleading fraud.

The Court has thus found that Allied Trust has adequately pled a claim for fraud and civil conspiracy to commit fraud and will permit those claims—but not the negligence claim—to survive past the pleading stage.[56] Accordingly, the negligence claim is dismissed.

---

[55] In response, Allied Trust cites various statutes that it claims creates a duty in tort owed by an appraiser. But as Allied Trust acknowledges, those statutes were enacted after Irwin issued his appraisal award. *See* La. R.S. § 22:1892, La. R.S. § 22:1807. In any event, the statutes cannot support a private right of action by an insurance company against its insured's appraiser. *See id.* § 22:1892(J)(3) (stating it "does not create a separate cause of action"); *id.* § 22:1807.3 (vesting the insurance commissioner with the ability to enforce the statutory provisions).

[56] In response, Allied Trust cites various statutes that it claims creates a duty in tort owed by an appraiser. But as Allied Trust acknowledges, those statutes were enacted after Irwin issued his appraisal award. *See* La. R.S. § 22:1892; La. R.S. § 22:1807. In any event, the statutes cannot support a private right of action by an insurance company against its insured's appraiser. *See id.* § 22:1892(J)(3) (stating it "does not create a separate cause of action"); *id.* § 22:1807.3 (vesting the insurance commissioner with the ability to enforce the statutory provisions).

### f. Allied Trust's Claim for Insurance Fraud under La. R.S. § 22:1924

In its third-party demand, Allied Trust asserts that Luke Irwin and his company's alleged actions "violate[d] La. R.S. 22:1924."[57] Allied Trust concedes in its response, however, that it "cannot recover under La. R.S. 22:1924" because that statute provides only for a criminal penalty and is enforced only by law enforcement and prosecutorial agencies. *See, e.g.*, *Broussard v. Manuel Med. Ctr.*, No. CV 16-0456, 2016 WL 8252853, at *7 (W.D. La. Dec. 14, 2016), *report and recommendation adopted sub nom. Broussard v. Manuel Med. Clinic*, 2017 WL 579566 (W.D. La. Feb. 10, 2017). This claim is therefore dismissed.

### g. Leave to Amend

Allied Trust requested that it be allowed to amend its complaint if the Court finds any of its claims deficient. Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P 15(a)(2); *Sigaran v. U.S. Bank Nat'l Ass'n*, 560 F. App'x 410, 412 (5th Cir. 2014). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to

---

[57] ECF No. 184 ¶ 61.

dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners*, LP, 620 F.3d 465, 468 (5th Cir. 2010).

Irwin argues that Allied Trust should be denied leave to amend its third-party demand because amendment would be futile for each of its claims. According to Irwin, no amendment could cure Allied Trust's various pleading deficiencies and the Court need not grant leave to amend "'if the complaint as amended would be subject to dismissal.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citation omitted).

The Court agrees with Irwin that amendment would be futile for the claims Allied Trust has failed to adequately plead: *i.e.*, breach of contract, negligence, and its claims under La. R.S. § 22:1924. No amendment can cure the fact that neither Irwin nor his company were party to the insurance contract between the O'Connors and Allied Trust. No amendment can cure the fact that insurance appraisers—like insurance adjusters—do not owe a tort duty to conform their conduct to a specific standard of care and thus may only be sued in fraud. And Allied Trust acknowledges that it cannot recover under La. R.S. § 22:1924.

Accordingly,

**IT IS ORDERED** that Third-party Defendants Luke Irwin and Irwin & Associates' motion[58] to dismiss the claims against them is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Allied Trust's claims for breach of contract, negligence, and violation of La. R.S. § 22:1924. The motion is denied as to Allied Trust's claims for fraud and civil conspiracy to commit fraud.

---

[58] ECF No. 206.

**IT IS FURTHER ORDERED** that Allied Trust's claims against Third-party Defendants for (1) breach of contract; (2) negligence; and (3) violation of La. R.S. § 22:1924 are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 19th day of December, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

27